**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SHEILA DAWSON, individually and as next friend of T.D., a minor, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )  No. 06-CV-555-TCK-FHM |
| THE GROVE PUBLIC SCHOOL DISTRICT, | ) ) ) |
| Defendant. | ) |

**ORDER**

Before the Court is Defendant's Motion for Summary Judgment (Doc. 19). Plaintiffs allege claims for sexual harassment, deprivation of liberty and property without due process, negligent infliction of emotional distress, defamation, and violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPPA").[1] Because Plaintiffs have confessed that they have failed to state a claim for a HIPPA violation, this cause of action is no longer at issue. Defendant has moved for summary judgment as to Plaintiffs' remaining claims.

**I.     Factual Background**

In late August or early September of 2005, Plaintiff T.D., who was then a middle school student at Grove Middle School, had sexual intercourse with A.D., a student at Grove High School

---

[1] Although Plaintiffs' Petition only specifies three causes of action – namely, negligent infliction of emotional distress, defamation, and violation of HIPPA – Plaintiffs have, in various pleadings, indicated that they are also asserting claims for sexual harassment and deprivation of liberty and property without due process. (*See* Pls.' Resp. to Def.'s Mot. for Summ. J. 12 ("Plaintiffs intend to assert a sexual harassment claim against the Defendant Grove Public School District."); Joint Status Report, Doc. 16 (stating that Plaintiffs "have asserted three causes of action" and listing those as "negligent infliction of emotional distress," "deprivation of Plaintiff T.D.'s rights of property and liberty" and "defamation").)

1

who was known to be HIV positive.[2] In his deposition, T.D. testified that he did not tell anyone about the incident except for his parents and a middle school counselor. News of the incident spread, however, and reached the middle school. One middle school student, B.D., estimated that half of the eigth grade class at Grove Middle School was eventually aware of the incident. One high school student, S.O., testified that she heard about the incident from another classmate and talked with T.D. about the fact that he had sex with A.D. S.O. was concerned for T.D. because A.D. was HIV positive, and S.O. accordingly told the high school counselor about the incident. Eventually, the information was imparted to the guidance counselor at Grove Middle School, Rhonda Rector ("Rector"). Rector thereafter informed Grove Middle School vice principal Pat Dodson ("Dodson") that T.D. had sex with a high school student known as having HIV. Thereafter, Rector called T.D.'s father and asked him to come to school to talk with her and Dodson. T.D.'s father met with Rector and Dodson and discussed the matter. That evening, T.D. and his father informed T.D.'s mother, Plaintiff Sheila Dawson ("Mrs. Dawson"), about the incident.

Sometime during the last week of September, T.D. testified that he noticed graffiti written on the wall of teacher Amanda Pollan's ("Pollan") middle school speech/drama class, which stated "T.D. has AIDS." T.D. testified that he asked Pollan what he should do about the graffiti, and she told him to clean it up. Pollan went to the supply closet and gave T.D. cleaning supplies, which he used to remove the graffiti. Approximately one week later, T.D. testified that he viewed another instance of graffiti, which also stated "T.D. has AIDS." This graffiti was located in a unisex bathroom near Pollan's classroom, and the statement was written in ink or marker on the side of the

---

[2] It is unknown whether T.D. is HIV positive as a result of having sex with A.D., as T.D.'s parents chose not to have T.D. tested due to the $120 fee associated with the test and the fact that T.D. wore a condom when engaging in sexual intercourse with A.D.

toilet paper dispenser. T.D. testified that he told Pollan about the graffiti in the bathroom, that she said nothing in response, and that T.D. then immediately marked out the graffiti with a "Sharpie" marker.[3] Pollan testified that she gave T.D. the "Sharpie" and that she reported the graffiti to the principal of the school, Donald Barr ("Barr").

Months later, on December 13, 2005, T.D. came into Barr's office and asked to use the school phone to call his attorney. T.D. testified that he asked to call his attorney because several classmates had approached him and asked if he had AIDS and his attorney had instructed T.D. to call him when that occurred. Barr testified that he told T.D. that he could not use the phone to call his attorney, but could call his parents. T.D. was allegedly upset by Barr's response and left Barr's office angrily, returning once more to make the same request. Barr again refused to permit T.D. to use the phone to call his attorney. Barr then called T.D's mother to discuss the matter with her, and she came to school to meet with Barr. Mrs. Dawson testified that during her meeting with Barr, Barr was uncooperative and refused to assist T.D. with the alleged incidents of bullying and graffiti. Barr disputes such claims, as does Rebecca Mease ("Mease"), the Director of Special Services and School Psychology of Grove Public Schools, who was also present during the meeting between Barr and Mrs. Dawson.

Barr eventually grew frustrated with Mrs. Dawson and requested that she and T.D. leave his office. Specifically, Barr said something similar to "take your son, leave the school, and don't come back." Mrs. Dawson testified that she interpreted this comment to mean that T.D. was not allowed

---

[3] T.D. also testified that another student reported graffiti about him in the bathroom across from the office, but T.D. never saw this graffiti and he cannot recall who told him about this alleged graffiti. Because T.D. does not have personal knowledge about this incident of graffiti, the Court will not consider this alleged incident in its analysis.

back at the school. Mease testified, however, that Mrs. Dawson specifically asked her during the meeting if Barr intended that T.D. never return to school. In response, Mease asked Barr – in the presence of Mrs. Dawson – if he only meant the remainder of the day, and Barr shook his head "yes." Because Mrs. Dawson was concerned about T.D.'s emotional well-being at school, she decided to place T.D. on a home based study program beginning the following day, December 14, 2005, for the remaining five days of the semester. A few days later, Mease and Barr wrote a letter to Mrs. Dawson, detailing what occurred at the December 13, 2005 meeting and confirming that Mease, after speaking with Mrs. Dawson, informed Barr that T.D. would receive home based educational services for the remainder of the semester. The letter further stated that T.D. was expected to resume his educational program at Grove Middle School on January 4, 2006.

T.D. never returned to Grove Middle School. Instead, his parents chose to keep him in home based studies for the remainder of the school year. Through the home based program, an instructor came to T.D.'s home, and T.D. passed all of this eighth grade classes and graduated to the ninth grade. During his deposition, T.D. testified that he received an education from Grove Public School District for the 2005-2006 school year.

## II.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir.1998) (citation omitted). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations"

in his complaint but must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

### III.   Sexual Harassment Claim

Although Plaintiffs' Petition lacks specific mention of a sexual harassment claim, and the Joint Status Report filed by Plaintiffs' counsel also fails to mention such a claim, Plaintiffs now claim, in their Response to Defendant's Motion for Summary Judgment, that they are asserting a claim of sexual harassment. (*See* Pls.' Resp. to Def.'s Mot. for Summ. J. 12.)  Plaintiffs do not, however, specify the legal basis for such claim.

Assuming, without deciding, that Plaintiffs are permitted to assert a sexual harassment claim at this stage of the proceedings, such a claim has no legal basis. Whether Plaintiffs are making such a claim under 42 U.S.C. § 1983 or Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, Plaintiffs' sexual harassment claim requires a showing that T.D. suffered harassment because of his gender. *See* 20 U.S.C. § 1681(a) (stating that "[n]o person in the United States shall, **on the basis of sex**, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance") (emphasis added); *Jennings v. Univ. of N.C. at Chapel Hill*, 240 F. Supp. 2d 492, 505-06 (M.D.N.C. 2002) (stating that "in order to bring a hostile work environment sexual harassment action under § 1983, the plaintiff must prove [*inter alia*] . . . the conduct was **based on the sex of the plaintiff**") (emphasis added). There is simply no evidence in the record to suggest that T.D. was targeted for abuse because he is a male. Plaintiffs have made no such showing, and, in fact, conceded that T.D. was not harassed because of his gender. When asked "[b]ut you don't believe that you were ever sexually harassed by any students just because you were a man, correct?," T.D. responded by stating

5

"correct." (T.D. Dep., Ex. 1 to Def.'s Mot. for Summ. J, at 112:25–113:1-3.) Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiffs' sexual harassment claim.

## IV. Due Process Claims

In their Petition, Plaintiffs allege that Defendant deprived T.D. of liberty and property without due process when it wrongfully prohibited T.D. from attending Grove Middle School. (*See* Pls.' Pet. ¶¶ 5, 9, 10.) Specifically, as outlined in their Response to Defendant's Motion for Summary Judgment, Plaintiffs allege that T.D. was wrongfully expelled from Grove Middle School without due process. (*See* Pls.' Resp. to Def.'s Mot. for Summ. J. 18.) The Supreme Court has held that where a state guarantees the right to public education, that entitlement is a property interest protected by the due process clause of the Fourteenth Amendment. *Goss v. Lopez*, 419 U.S. 565, 574 (1975).[4] Because the Court finds that the factual basis supporting Plaintiffs' due process claims to be completely without merit, such claims are appropriate for summary judgment.

First, despite Plaintiffs' contentions, the record reflects that Defendant did not take any action which prohibited T.D. from attending Grove Middle School or receiving an education. Rather, as reflected in the testimony of Mrs. Dawson and Mease, it was the decision of T.D.'s parents, and not the decision of any administrator at Grove Middle School, to place him in home based studies for the remainder of his eighth grade year. Although Plaintiffs argue that the statement of Barr, wherein he said something to the effect of "take your son, leave the school, and don't come back" demonstrated that T.D. was not entitled to return to Grove Middle School, the letter sent to Mrs. Dawson from Barr and Mease, dated December 19, 2005, clearly states that "T.D. will be

---

[4] Plaintiff did not provide, nor could the Court find, any authority suggesting that denial of the right to attend school amounts to a deprivation of **liberty** in violation of the due process.

expected to resume his educational program at Grove Middle School on Wednesday, January 4, 2006." (Ex. 15, Def.'s Mot. for Summ. J.) Mease's deposition testimony also indicates that Mrs. Dawson was informed, during the meeting on December 13, 2005, that Barr's statement only referred to the remainder of the day. Because the decision to have T.D. complete the school year in home based studies was entirely that of his parents, there was no state action amounting to a "deprivation."

Second, the record reflects that T.D. was not denied an education while in home based studies, as T.D. specifically stated so much during his deposition, and further indicated that he passed all of his classes for his eighth grade year and successfully matriculated into the ninth grade. (*See* T.D. Dep., Ex. 1 to Def.'s Mot. for Summ. J, at 65:12-22.) Finally, any argument that Defendant deprived T.D. of a liberty or property interest because of the "offensive, unbearable, and hostile environment toward [T.D.]" is without evidentiary support. (Pls.' Pet. ¶ 10.) Although likely unpleasant, there is no evidence in the record to support the assertion that the instances of graffiti and student chatter regarding the fact that T.D. had sexual intercourse with A.D. were so unbearable as to deprive T.D.'s right "to a quality and productive public education." (*Id.*) Plaintiffs' due process claims are thus without any evidentiary support, rendering summary judgment proper.[5]

## V.     Plaintiffs' State Law Claims

In addition to their federal claims, Plaintiffs allege state law claims for negligent infliction

---

[5] Paragraph 9 of Plaintiffs' Petition refers to an alleged violation of "**Plaintiffs'** property and liberty rights," suggesting that this claim is asserted not only on behalf of T.D. but also on behalf of Sheila Dawson. (Pls.' Pet. ¶ 9 (emphasis added).) To the extent that such representation is not a typographical error and Plaintiffs are also asserting due process claims on behalf of Sheila Dawson individually, Plaintiffs have alleged no facts suggesting that Sheila Dawson has been deprived of any liberty or property interest.

7

of emotional distress and defamation against Defendant, which both require proof of negligence on the part of the accused. Specifically, in order to recover for defamation, Plaintiffs must prove: (1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) **fault amounting at least to negligence** on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damages caused by the publication." *Trice v. Burress*, 137 P.3d 1253, 1257 (Okla. Ct. App. 2006) (emphasis added). Further, under Oklahoma's jurisprudence, negligent infliction of emotional distress is not an independent tort, but is in effect the tort of negligence. *Lockhart v. Loosen*, 943 P.2d 1074, 1081 (Okla. 1997) (citing *Kraszewski v. Baptist Medical*, 916 P.2d 241, 243 n.1 (Okla 1996)); *Mason v. State ex rel. Bd. of Regents of Univ. of Okla.*, 23 P.3d 964, 969 (Okla. Ct. App. 2001). In order to show negligence, a plaintiff must demonstrate: (1) a duty owed by the defendant to protect the plaintiff from injury; (2) a failure to properly perform that duty; and (3) the plaintiff's injury being proximately caused by the defendant's breach. *Lockhart*, 943 P.2d at 1079.

In asserting that Defendant breached its duty to protect and supervise T.D., Plaintiffs make various allegations. First, Plaintiffs maintain that there is an issue of fact as to whether Grove Public School District employees were involved in circulating the rumors regarding T.D. and whether he was HIV positive. Plaintiffs have provided nothing but conjecture to support this assertion. In their response brief, Plaintiffs state that "[i]t is within the realm of possibility that . . . school personnel could have spread the rumor that T.D. was 'HIV positive' or has 'AIDS,' as they knew about the sexual encounter prior to the circulating of rumors and graffiti on Grove Public School District Grounds." (Pls.' Resp. to Def.'s Mot. for Summ. J. 15.) Being within the "realm of possibility" is simply insufficient to survive summary judgment. Plaintiffs have produced no evidence suggesting

that any employee of the Grove Public School District had any part in the rumors and graffiti regarding T.D. In fact, the deposition testimony of both T.D. and Mrs. Dawson illustrate that neither Plaintiff has any personal knowledge of such involvement. (*See* T.D. Dep., Ex. 1 to Def.'s Mot. for Summ. J, at 54:25-55:18; Sheila Dawson Dep., Ex. 5 to Def.'s Mot. for Summ. J., at 61:9-63:24, 76:4-77:8.) Further, as reflected in the testimony of other students, knowledge of the fact that T.D. had sexual intercourse with A.D. was widespread within the middle school, increasing the possible sources of the graffiti. Plaintiffs are not permitted to "rest on mere allegations" at this stage and must set forth "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Plaintiffs have set forth no such facts.

Second, Plaintiffs allege that Defendant breached its duty to T.D. because it was T.D., rather than school personnel, who removed the graffiti in Pollan's classroom and the nearby bathroom.[6] Central to this theory of liability is the assertion that Defendant had a duty to remove the graffiti, rather than allow T.D. to complete this task. As stated by the Oklahoma Supreme Court, "[o]ne of the most important considerations in establishing a duty is foreseeability." *Weldon v. Dunn*, 962 P.2d 1273, 1276 (Okla. 1998). "Whenever the circumstances attending a situation are such that an ordinarily prudent person could reasonably apprehend that, as the natural and probable consequences of his act, another person will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises." *Id.* (citing *Bradford Sec. Processing Serv. v. Plaza Bank & Trust*, 653 P.2d 188 (Okla. 1982)). The Court finds that it was not foreseeable that T.D. would be injured by

---

[6] Although removed by T.D., the graffiti was removed immediately after it was viewed by T.D., and school personnel were aware that the graffiti was removed. This is not a situation, therefore, in which the school was notified of derogatory graffiti and failed to take any action so that the graffiti remained intact.

removing the graffiti.  Any foreseeable injury caused by the graffiti would have been due to the existence of the graffiti itself, and not the process by which said graffiti was removed from the school.  Plaintiff has not provided, nor has the Court found, any authority holding Defendant to a higher standard or requiring that Defendant, rather than T.D., remove the graffiti itself. Accordingly, for the reasons outlined above, the Court grants summary judgment as to Plaintiffs' claims for negligent infliction of emotional distress and defamation.[7]

## VI. Conclusion

Defendant's Motion for Summary Judgment (Doc. 19) is GRANTED in its entirety.  A Judgment will be entered by separate Order.

**ORDERED this 27th day of September, 2007.**

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**

---

[7] Because the Court finds Plaintiffs' state law claims to fail on these grounds, the Court does not address Defendant's arguments related to the Oklahoma Governmental Tort Claims Act.

10